UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. Number: 2:09-cr-00484 |
| v. | OPINION |
| DALMACIO TOLENTINO, | HON. WILLIAM J. MARTINI |
| Defendant. | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

On November 13, 2009, Defendant Dalmacio Tolentino pled guilty in open court to violating 21 U.S.C. § 846, that is, to knowingly and intentionally conspiring to distribute and possess with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A). Prior to pleading guilty, Tolentino had the benefit of a written plea agreement (which he had signed prior to his pleading guilty in open court), (Spanish speaking) counsel who had explained the terms of the agreement to him, a Spanish-to-English translator (although the Defendant speaks "remarkably good" English), Tr. 11, and a colloquy with this Court.

During the colloquy with the Court, the Defendant stated that he did not suffer from any medical or psychiatric condition which would interfere with his understanding the proceedings, that he had not taken any medication or alcohol in the 48 hours prior to the colloquy, that he was satisfied with the services of his attorney, that his lawyer had explained the nature of the criminal charge to which he was about to plead, that his lawyer explained the charge to him prior to the day of the colloquy, that he understood the charge, that he understood the potential penalty he

faced (including a prison sentence, fine, assessment, supervised release, and his potential eligibility for the "safety valve" should he meet certain conditions). Likewise, in regard to his trial rights, the Defendant stated that he understood that by accepting the plea he was giving up his right to a trial by twelve jurors, a trial at which he would have a right to counsel even if he could not afford one, a trial at which he would be presumed innocent, have no duty to put forward a defense or to testify in his own behalf, and if he chose not to testify, the jury would not be permitted to infer wrongdoing or guilt, and, finally, that the Government would be obligated to prove its case (and each element of the charged offense) beyond a reasonable doubt to the satisfaction of all 12 jurors who would have to unanimously agree in order to convict him. He stated that he understood all these rights and that he was giving them up voluntarily, further acknowledging that his right to appeal would be restricted, and that he would be unable to withdraw his plea should the Court choose to sentence the Defendant without regard to the plea agreement struck between the Government and the Defendant. He also stated that he understood that by pleading guilty he risked removal from the United States. Finally, through a colloquy with the AUSA on this case, he acknowledged committing the elements of the offense to which he pled. He also specifically acknowledged his guilt at least three times during the colloquy. Tr. 19, 20 & 21.

The Defendant now seeks to withdraw his guilty plea. For the reasons explained below, Defendant's motion will be **DENIED**.

## II.     STANDARD OF REVIEW

"[A court] looks to three factors to evaluate a motion to withdraw: (1) whether the defendant asserts her innocence; (2) whether the government would be prejudiced

by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). "[A] defendant must have a "fair and just reason" for withdrawing a plea of guilty. Fed. R. Crim. P. 11(d)(2)(B). "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

### III.  ANALYSIS

The Defendant has not met the first prong. He has not meaningfully asserted his innocence. In other words, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense. [And] [o]nce a defendant has pleaded guilty, he must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Jones* at 254. Here, Defendant makes a blanket assertion of innocence. Aff. ¶ 7. In particular, he asserts that "after entering [his] plea," he became "aware" that the Government's tapes, that is, the recorded conversations between him and the confidential informant," the so-called "CI," were incomplete. He fails to put the Government on notice as to which particular tapes are incomplete. As to what was said in the alleged gaps, he asserts that he "believes" the gaps "would demonstrate that [he] was threatened by the 'CI' to join the conspiracy," which if true might provide a viable defense grounded in entrapment, duress, excuse, or justification. Aff. ¶ 4. Plaintiff fails to explain why he only "believes" the (alleged) gaps, if produced, would exonerate him. Plaintiff fails to explain why he did not

pursue this defense, even absent the tapes, at the trial that was offered to him prior to and during the colloquy. Plaintiff makes no proffer that any expert has examined and will testify that the electronic recordings at issue have been manipulated. And, most importantly, he fails to explain why he only became aware of these gaps after he pled. Given that he is alleging that he was threatened by the CI, one might reasonably believe that these events would be quite memorable.

Plaintiff also asserts that the CI was, in fact, a "federal agent," and reasons that the Government has been less than "truthful" in making representations to him in regard to the CI's status. Aff. ¶ 5. Again, no factual basis is put forward which would indicate that the CI was anything other than a CI. Indeed, had the Government alleged that the CI was, in fact, a federal agent, the Government's case would have been improved, probably dramatically. So it is very difficult to understand why the Government might have made any misrepresentation in this regard. Even if the Government did err in this regard, this information is not exculpatory, and, therefore, it does not provide any basis to believe the Government failed in regard to its other discovery obligations. Finally, Defendant asserts that several translations of the Government's tape recordings are incorrect. He fails to identify any particular tapes, the alleged errors, their materiality either to his plea or to its withdrawal, or why he was unable to identify these errors before he entered his plea. Again, Defendant's conclusory allegations in support of his motion are unsupported by specific facts and do not square with his guilty plea in open court.

As to the third prong, that is, the strength of his reasons for withdrawal, Defendant's position is extremely weak. His primary argument is that but-for the gaps in the tapes, he could establish his innocence, but this claim lacks detail. Exactly how and when did the CI "threaten" him? Aff. ¶ 4. And if the CI did threaten him, how is

it that the Defendant only now remembers that those threats were made during the conversations recorded by the Government? Why did he admit to guilt in open court rather than pursue this defense? The Government has affirmed that it has turned over both all *Brady* material and all material subject to Fed. R. Crim. P. 16(a)(1)(B)(i). Yet, if the Government failed to disclose the supposedly missing material, why is it only now that Defendant alleges that the Government failed to meet its discovery obligations? All this is unexplained which, of course, undermines Defendant's position. To put it another way, Defendant is alleging a *Brady* violation. But conclusory allegations without detail, coming after a guilty plea in which the defendant agreed to the factual bases for the crime charged, and without any explanation why defendant only recently realized that allegedly exculpatory statements were embodied in recordings to which he was a party, recordings which had been in his possession for a substantial amount of time, do not begin to establish a *Brady* violation. It is just a naked allegation of wrongdoing brought against the Government, and one which is inconsistent with Defendant's prior representations in open court.

Finally, the Court notes that Defendants' brief is more detailed than Defendant's affidavit in support of the motion. These inconsistencies are puzzling and do not buttress Defendant's case. *Compare* Aff. ¶ 4 (alleging that the CI threatened the Defendant), *with* Defendant's Brief 22 (alleging that the CI threatened the Defendant and his family); *compare* Aff. ¶ 3-4 (alleging that some of the tapes have gaps), *with* Defendant's Brief 15 & 22 (apparently arguing that some taped conversations were not supplied at all, not just gaps); *compare* Aff. ¶ 6 (asserting only that some of the tapes had been translated by the Government incorrectly)*, with* Defendant's Brief 17 (asserting that the "incorrect" translations are "extremely

relevant"); *compare* Aff. ¶ 4 (alleging that the CI threatened Defendant), *with* Defendant's Brief 23 (alleging that the CI "entice[d]" the Defendant).

Although the Government has not established prejudice, that is, the second factor, the Court concludes based on the first and third factor, that Defendant has not carried his burden. *See United States v. Harris*, 44 F.3d 1206, 1210 & n.1 (3d Cir. 1995).

## IV.   CONCLUSION

For all the reasons explained above, Defendant's motion is **DENIED**.

An appropriate order accompanies this opinion.

|  |  |
|---|---|
|  | s/ William J. Martini |
| **DATE: March 24, 2010** | **William J. Martini, U.S.D.J.** |